UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Criminal Case No. 21-20372
Honorable Linda V. Parker

DERRICK JENKINS,

Defendant.
_______________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 19)**

Defendant Derrick Jenkins ("Mr. Jenkins") has been charged with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(2)(1). The charge arises from a traffic stop of Mr. Jenkins and the driver of the vehicle by two Detroit Police Officers while merging onto the Edsel Ford Expressway in Detroit, MI, on April 28, 2021. Mr. Jenkins now moves to suppress the firearm officers uncovered during the stop, claiming it was seized in violation of the Fourth Amendment. Mr. Jenkins also seeks to suppress any statements made as "fruits of the poisonous tree." (ECF No. 19 at Pg ID 52, ¶ 7.) On May 15, 2023, the Court held oral arguments[1] on the motion where parties were allowed to present and examine witnesses. For the reasons that follow, the Court is denying Defendant's motion.

---

[1] In his reply, Mr. Jenkins maintains that an evidentiary hearing was required because of the "tardiness" of the Government's dash cam footage. (ECF No. 24 at

**Factual Background**

On April 27, 2021, Detroit Police Officers engaged in a "takedown operation" of a known narcotics location ("the residence"), which resulted in "multiple suspected narcotics transactions and the recovery of marijuana and Oxycodone pills." (ECF No. 19-3 at Pg ID 72.) On April 28, 2021, at approximately 12:50 p.m., Detroit Police Officers Jordan Leavy and Nicholas Reno were conducting surveillance of the same residence in response to a narcotics complaint. Officers Lamar Kelsey and Andrea Kricak were in the area of the residence in a marked police vehicle seeking to conduct traffic stops of vehicles that left the residence. Mr. Jenkins arrived to the residence as a passenger in a white Chevrolet Equinox driven by Devaughn Morgan ("the driver"). Both Mr. Jenkins and the driver entered the residence and stayed for two to three minutes before exiting. After following the vehicle for approximately one mile, Officer Leavy described the vehicle over the police radio to Officers Kelsey and Kricak

---

Pg ID 92.) Specifically, Mr. Jenkins alleges that he was advised that no dash cam footage video existed, and that any potential footage was "corrupted," so the Government's "disclosure of dash cam video at such a late hour suggests to Mr. Jenkins that the Government failed to diligently assess whether relevant *Brady* and other discovery material existed." (*Id.* at 93 (discussing *Brady v. Maryland*, 373 U.S. 83 (1963).) Despite the tardiness of the dash cam footage, Mr. Jenkins was afforded an adequate opportunity to fully brief the motion and has not suffered any prejudice as a result of the delay. However, the Court elected to allow for oral arguments irrespective of Mr. Jenkins' allegations.

and notified them of the vehicle's route. While following the vehicle, Kelsey and Kricak observed the vehicle change lanes without using any signals. These officers then conducted a traffic stop of the vehicle on the entrance ramp near the Edsel Ford Service Drive. Upon request, the driver produced an expired driver's license. The officers also smelled marijuana, which the driver admitted was present in the vehicle. While conducting a search of the vehicle, officers discovered a firearm between the passenger seat and center console. After being read his *Miranda* rights, Mr. Jenkins agreed to answer the officer's questions. Mr. Jenkins then admitted that he was aware of the firearm, that the firearm belonged to him, and he identified the make of the firearm.

**Applicable Law & Analysis**

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. amend. IV. A law enforcement officer's stop of a suspect—though potentially brief in duration—demonstrably infringes upon the suspect's liberty and thus constitutes a seizure for Fourth Amendment purposes. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment. Accordingly, any evidence seized during an illegal traffic stop must be suppressed as fruits of

the poisonous tree." *United States v. Blair,* 524 F.3d 740, 748 (6th Cir. 2008) (citations and internal quotation marks omitted) "It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).

Moreover, although a passenger does not have standing to contest the search of a vehicle for purposes of a Fourth Amendment violation, a passenger does have standing to contest whether their seizure was lawful. *See Brendlin v. California,* 551 U.S. 249, 251 (2007); *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015). Thus, a passenger may argue that any evidence obtained from "the ensuing vehicle search 'should be suppressed as fruits of illegal activity.'" *Bah*, 794 F.3d at 626 (quoting *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007)).

Mr. Jenkins seeks to suppress the evidence arguing that officers did not have the requisite probable cause or reasonable suspicion to initiate the traffic stop. (ECF No. 19 at Pg ID 56.) The Court disagrees. Despite Mr. Jenkins' argument that "the vehicle remain[ed] within its lane that merge[d] onto a ramp," ECF No. 24 at Pg ID 91, and that a reasonable driver would not think there was a lane change without any delineation, the Government maintains, and the dashcam footage supports, that the vehicle occupied by Mr. Jenkins did in fact switch lanes without a traffic signal in violation of Michigan law. *See* Mich. Comp. Laws §

257.648. Mich. Comp. Laws § 257.648(1), in pertinent part, provides that "[t]he driver of a vehicle or bicycle upon a highway, before stopping or *turning from a direct line,* shall first see that the stopping or turning can be made in safety and shall give a signal as required in this section." (emphasis added). Although the phrase "turning from a direct line" is not defined in the text of the statute, the Michigan Court of Appeals concluded that the ordinary meaning of this phrase means "to rotate one's vehicle to the extent that one leaves the line of automobiles in which one is traveling." *People v. Hrlic*, 744 N.W.2d 221, 225 (Mich. Ct. App. 2007) (interpreting Mich. Comp. Laws § 257.648(1)). The appellate court further opined, more importantly, that "the purpose of the statute is to provide notice of movements along the route that could affect other motorists" and that it was unnecessary to "make a distinction between movement off the roadway and movement between lanes." *Id.*

This Court applies the same logic here: there is no need to distinguish between the driver's movement onto the expressway or movement between lanes. Because other traffic was visibly behind Mr. Jenkins' vehicle, the driver was required to signal and provide notice to traffic before moving to enter the expressway. As this Circuit has made clear, for purposes of the Fourth Amendment, "there is nothing unreasonable about stopping a vehicle whose driver has just committed a traffic violation." *See United States v. Street*, 614 F.3d 228,

232 (6th Cir. 2010) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)); *see also Jackson*, 682 F.3d at 453 (citing cases) (determining that "[a] driver's failure to use a turn signal provides probable cause to justify a traffic stop irrespective of the officer's subjective intent.").

Mr. Jenkins also maintains that "in an attempt to justify the stop of the vehicle containing Mr. Jenkins, the Government seems to allege, at least in part, that Mr. Jenkins' visit to [the residence] provided the requisite reasonable suspicion of criminal activity." (ECF No. 19 at Pg ID 57.) Although the Court has already found that probable cause existed to stop the vehicle, the Court notes that the Government's arguments were unavailing to say the least. In support of their assertion that reasonable suspicion existed as to whether a crime was being committed, the Government points to conflicting, and at moments, confusing testimony and reports regarding the officers' recollection of the events leading up to the arrest, the fact that the vehicle had an out of state license plate, and Mr. Jenkins' brief visit to the home. This evidence standing alone—without more—does not raise any level of suspicion and cannot fathomably be considered reasonable.

**Conclusion**

Because the vehicle occupied by Mr. Jenkins clearly violated a traffic law, the Court finds that probable cause existed for the officers to stop the vehicle, and

as such, there was no violation of Mr. Jenkins' rights under the Fourth Amendment.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress (ECF No. 19) is **DENIED**.

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 18, 2023